Filed 12/8/23  P. v. Garcia CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098849 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE001992) |
| v. | |
| ARMANDO GARCIA, | |
| Defendant and Appellant. | |

A jury found defendant Armando Garcia guilty of attempted murder and assault. As relevant to his current appeal, it also found true that he personally used a firearm in the commission of the attempted murder, discharged it, and caused great bodily injury or death.  (Pen. Code, § 12022.53, subd. (d).)[1]  The trial court originally sentenced defendant to a term of 39 years to life, including a term of 25 years to life for the firearm

---

[1] Further undesignated statutory references are to the Penal Code.

1

enhancement.  In his first appeal, a different panel of this court affirmed the convictions, but remanded the case for resentencing consistent with the current law.  On remand, the trial court declined to strike the section 12022.53, subdivision (d) firearm enhancement.  Defendant argues the trial court was required to dismiss this enhancement pursuant to the amendment of section 1385 by Senate Bill No. 81 (2021-2022 Reg. Sess.).  He further argues the trial court abused its discretion in determining that dismissing that enhancement would endanger public safety.  We disagree and will affirm the judgment.

## I.  BACKGROUND

The following background is taken from our prior unpublished opinion in defendant's direct appeal, *People v. Garcia* (Sept. 30, 2022, C094758) [nonpub. opn.].

"In 2012, defendant, who went by the moniker 'Bad Boy,' shot the victim, who went by the moniker 'Puppet,' in his chest, stomach, and forearm.  The victim made it back to his house, where sheriff's deputies found him.  The victim did not identify the shooter, but pointed up the street to indicate where the shooting had happened.  Deputies canvassed the area and found blood and shell casings. . . .  They also found five spent shell casings and one live round.  Although the shooting occurred in 2012, defendant was not arrested until 2018."  (*People v. Garcia, supra*, C094758.)

"The victim was in the hospital for about two weeks and required a breathing tube.  He walked with a cane for two or three months after his release from the hospital.  At trial, the victim said he did not know who shot him, did not remember the location of the shooting, and 'could have' lied to the deputies about the location when they spoke to him at the time of the shooting."  (*People v. Garcia, supra*, C094758.)

During an encounter with defendant in 2013, police found the gun that fired the casings they found at the apparent shooting scene.  The gun they found was a "7.62- by 25-millimeter caliber Norinco semiautomatic.  A police sergeant testified that this type of gun was rare . . . [and] 'pretty unique,' in part because it had a similar barrel diameter to an AK-47 assault rifle."  (*People v. Garcia, supra*, C094758.)

Defendant admitted he was the shooter to an undercover informant for the Federal Bureau of Investigation. In addition, the victim provided a statement to the police that incriminated defendant as the shooter. (*People v. Garcia, supra*, C094758.)

"The jury found defendant guilty of attempted murder (§§ 187, subd. (a), 664; count one) and assault with a semiautomatic firearm (§ 245, subd. (b); count two). The jury also found true firearm enhancement allegations under section 12022.53, subdivisions (b), (c), and (d) as to the attempted murder count and under section 12022.5, subdivision (a) as to the assault count. The jury also found true a great bodily injury enhancement as to the assault count. (§ 12022.7.) Defendant admitted he had a 1998 conviction for reckless discharge of a firearm (§ 246.3) and the parties stipulated to a factual basis." (*People v. Garcia, supra*, C094758.)

The probation report disclosed defendant had eight prior felony convictions: a 1996 conviction for carrying a loaded weapon (former § 12031.5, subd. (a)), a 1997 conviction for car theft (Veh. Code, § 10851, subd. (a)), a 1998 conviction for unlawful discharge of a firearm (§ 246.3), a 2000 conviction for car theft and fleeing a peace officer (Veh. Code, § 2800.2 subd. (a); § 10851 subd. (a)), a 2004 conviction for fleeing a peace officer (Veh. Code, § 2800.2 subd. (a)), a 2006 conviction for possession or sale of controlled substance with a firearm (Health & Saf. Code, § 11379, subd. (a); § 667.5, subd. (a)), a 2007 conviction for grand theft (§ 487, subd. (a)), and a 2013 conviction for being a felon in possession of a firearm (§ 29800, subd. (a)). The report disclosed that defendant was sentenced to six years in prison in 2013 on the final charge and released to community supervision in 2017. Defendant did not report to probation as directed. The report also found the following circumstances in aggravation under California Rules of Court, rule 4.421(a) and (b): The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; the defendant was armed (noting this was the basis for the enhancement); the manner in which the crime was carried out indicated planning, sophistication, or

professionalism; the defendant engaged in violent conduct which indicates a serious danger to society; defendant's convictions were numerous and of increasing seriousness; defendant served prior prison terms; and defendant's performance on probation or parole was unsatisfactory. The probation report found no circumstances in mitigation.

"The [trial] court imposed a determinate sentence of 14 years (the midterm, doubled for the prior conviction) for the attempted murder conviction, plus a consecutive indeterminate term of 25 years to life for the section 12022.53, subdivision (d) enhancement." (*People v. Garcia, supra*, C094758.)

On appeal, another panel of this court vacated the prior conviction finding, the order on defendant's motion to strike the firearm enhancement, and defendant's sentence. The panel remanded the matter for resentencing. In all other respects, this court affirmed defendant's convictions. (*People v. Garcia, supra*, C094758.)

On remand, defendant's counsel renewed his request to strike or reduce the firearm enhancement. Counsel informed the trial court defendant was married, had a home to go to, and he would seek and maintain employment if released. Defendant also independently requested that his next appearance be by video because he was engaged in self-help programs in prison and did not wish to miss the next opportunity to enroll in college.

At argument, the People urged the trial court not to reduce the firearm's enhancement sentence. The People focused on the aggravating factors of the egregious nature of the attempted murder, the callousness of the crime, and the evidence defendant bragged about this attempted murder after he got out of prison in 2017.

At this point in the argument, the trial court stated, "Let me make a parenthetical observation: The appellate court didn't express a view on it or specifically said they weren't expressing a view. . . . They either remand it for exercise of the discretion, or if they conclude that I wouldn't have exercised my discretion in the fashion sought by the

4

Defendant, they don't remand for that consideration. Here they did, because I didn't rule out the possibility that I would exercise my discretion if I had the discretion.

"Let me come back to you, [defense counsel]. Many—I've had many of these cases back because of the changes in the law, and often I have reduced the sentence from what I originally had imposed. All of us in this courtroom have seen a lot of murders and attempted murders. This particular attempted murder was on the vigorous end of the spectrum in regard to attempted murders. We see attempted murders where the victim isn't hurt. We see attempted murders where the victim is shot once. In this case the evidence showed that the victim was hit five times, shot five times at least. [Defendant] himself said that he popped him eight times. This is a situation where the absence of fortuity would certainly have resulted in the death of the victim in this case.

"So I'm not telegraphing a decision on this, but I do want you to appreciate, as you argue your point, that this is not a case where the Defendant has the ability to suggest by way of record that he's a one-off or a first time out or a—this was a bad day or exercised bad judgment or 'I'm terribly remorseful.' None of those seem to be in play.

"His criminal record, as you know, is very extensive, and I don't—I'm looking for attenuating or mitigating factors here, and I'm not seeing them. Maybe you have some in mind that you can argue."

In response, defendant argued while the victim was seriously injured, much more serious injuries have occurred in other cases. Defendant conceded he had a criminal record, but asserted other people had worse records. Finally, he noted in the time period after the attempted murder in 2013, defendant "might have had some more convictions, but nothing that involved gun violence [or] interpersonal violence."

The People informed the trial court that during four years of the period defense counsel represented defendant had no convictions involving violence (i.e. between 2013 and 2017), he was incarcerated and did not report to probation after his release from prison.

The trial court reminded defense counsel that it had dismissed a pending felony assault that occurred in jail based on the People's motion. Defense counsel's rejoinder was that jail was a "different kind of environment, and there are pressures and issue[s] involved with being an inmate in a custodial setting that are not the same when somebody is released and is 'out on the street,' and that's perhaps my reference point and what I would ask the Court to keep in mind."

When the trial court told the parties it was not persuaded by the request to reduce the enhancement to 10 years, it asked the People whether a 20-year term might be a sufficient sentence. The People responded defendant was a career-hardened criminal and he represented a "unique danger to society."

At the conclusion of the argument, the trial court stated, "I typically, in a situation presented like this, would be looking at a number of factors, including whether this was a fairly isolated event, how it integrates, if it does, with a whole criminal history or doesn't because there isn't a lengthy criminal history. I would entertain consideration of how the Defendant has done since the time of the events which resulted in the conviction which brings him to sentencing before me and various relevant factors such as those.

"And I frequently, I would venture more times than not, do find that there's a basis to reduce the imposition of sentence when I have been accorded discretion subsequently by the legislature which wasn't available at the time of the original sentencing.

"This is not one of those cases, though, because of the reasons that have been expressed at some length on this record already.

"I think [defense counsel] makes as energetic an argument as can be for you . . . but I am having to deal with the reality that before you got to my court, you had eight separate felony convictions. Your case at time of sentencing involved the dismissal of a pending new felony charge, which I will assume, for purposes of this sentencing, you were not guilty of based upon the presumption you are due.

6

"And I do think that 25-to-life is a very substantial enhancement, but insofar as the legislature created that enhancement for what I would consider now, given the discretion that the Court has, the unusual cases where a Court has a legitimate concern about the violence of the Defendant, this case falls within that."

The trial court sentenced defendant to the middle term of seven years in state prison on the attempted murder. On the firearm enhancement at issue in this appeal, the trial court imposed the 25-to-life sentence again.

Defendant filed a timely notice of appeal.

## II. DISCUSSION

Defendant argues section 1385, subdivision (c)(2)(C) required the trial court to dismiss the section 12022.53, subdivision (d) firearm enhancement. We disagree.

"In 2021, the Legislature enacted Senate Bill No. 81 (2021-2022 Reg. Sess.) . . . , which amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice. (Stats. 2021, ch. 721, § 1.)" (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)

Subdivision (c)(1) of section 1385 as amended provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Subdivision (c)(2) of section 1385 provides in relevant part: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." The pertinent factor here is contained in subdivision (c)(2)(C) of section 1385, which states: "The application of an

7

enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed."

Taken together, these provisions provide the trial court with the discretion to decide not to dismiss the enhancement due to the mitigation factors in section 1385, subdivision (c)(2), if the trial court finds the dismissal of the enhancement would endanger public safety or is not in the interest of justice.  (*People v. Ponder* (2023) 96 Cal.App.5th 1042, 1052-1053; *People v. Lopez* (2023) 93 Cal.App.5th 1110, 1120, review granted Nov. 15, 2023, S281488; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 297; *People v. Anderson* (2023) 88 Cal.App.5th 233, 240, 241, review granted Apr. 19, 2023, S278786; *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098, review granted Apr. 12, 2023, S278894; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15-21; *People v. Walker* (2022) 86 Cal.App.5th 386, 396, review granted Mar. 22, 2023, S278309.)  We agree with these published cases and conclude the trial court had the discretion to decide whether to strike or not strike the enhancement.

Defendant next argues the trial court "abused its discretion by finding that [defendant] was a danger to public safety without considering require[d] factors in mitigation."  We disagree.

We review a trial court's order denying a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373-374.)  An abuse of discretion may occur where the trial court is not aware of its discretion, considers impermissible factors, fails to consider relevant factors; or where the decision is so irrational or arbitrary, no reasonable person could agree with it.  (*Id.* at pp. 377, 378.)  "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary."  (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Here, during the sentencing hearing, the trial court judge, who also presided over the original trial, gave both parties an opportunity to be heard on the issue of whether it

should reduce or strike the enhancement. The trial court recognized it had the discretion to strike or reduce this enhancement. Upon the conclusion of the argument, the trial court agreed defendant's attorney made "as energetic an argument as [could] be" made for defendant, but noted it was faced with the reality defendant had "eight separate felony convictions." We reject defendant's attempt to take these offenses on one by one and suggest they are less serious than they are. These offenses demonstrate defendant's willingness to carry a gun, negligently fire it, and have it when he was selling drugs, and to do so after he was a convicted felon and barred from possessing it. His record also demonstrates he has repeatedly stolen cars and fled from the police. In this case, defendant attempted to kill this victim by shooting him at least five times. As the trial court stated, this attempted murder was on the "vigorous end of the spectrum."

The trial court also acknowledged a sentence of 25 years to life was a substantial enhancement, but found it was not inclined to reduce this sentence even though it had been given the discretion to do so by the Legislature. Despite defendant's argument the trial court failed to consider the items he put forth as mitigating factors, nothing in the record suggests the trial court ignored or failed to consider the positive things pointed out in defendant's briefing. We interpret the trial court's statement that it saw no mitigating factors, as finding that the positive things defendant shared (being married, having a home, and being willing to find employment) did not overcome the aggravated nature of the crime or his criminal record. The trial court found this defendant's conduct in this attempted murder and his prior criminal record demonstrated he was someone who should be sentenced to 25 years to life. We cannot conclude that the trial court's implicit finding that a dismissal of the enhancement would endanger public safety is so irrational or arbitrary that no reasonable person could agree with it.

## III.  DISPOSITION

The judgment is affirmed.


/S/

_____
RENNER, J.


We concur:


/S/

_____
DUARTE, Acting P. J.


/S/

_____
KRAUSE, J.

10